IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

TUFFY ASSOCIATES CORP.,

                Plaintiff,          Case No. 3:08 CV 2511

-vs-

                                  MEMORANDUM OPINION

FELTON TIRES & AUTO, INC., et al.,

                Defendant.

KATZ, J.

This matter is before the Court on Defendant Robert Riley's ("Mr. Riley") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[1] (Doc. 16). Plaintiff Tuffy Associates Corp ("TAC" or "Plaintiff") has filed an opposition (Doc. 17), and Mr. Riley has filed a reply (Doc. 24). This Court has diversity jurisdiction under 28 U.S.C. §1332(a).

**I.    BACKGROUND**

    **A.    Procedural**

Plaintiff brought suit on October 23, 2008, alleging, *inter alia*, a claim against Mr. Riley for breach of a guaranty contract. (Doc. 1, Count 23, pp. 23-24, ¶¶ 177-83). Plaintiff alleges that Mr. Riley has personally guaranteed all obligations of Defendant Felton Tire and Auto, Inc. ("FTA") to Plaintiff. (*Id.*).

---

[1] It is important to note that all litigation concerning Defendants Aubrey and Deborah Felton has been stayed pending the conclusion of bankruptcy proceedings. *See* Notice of Bankruptcy (Doc. 29); *see also* 11 U.S.C. § 362(a)(1). Mr. Riley has moved to dismiss claims solely against him as an individual. Plaintiff alleges joint and several liability of Defendants. Any determination as to Mr. Riley's liability in no way acts as a determination regarding the liability of any other defendant, including the Feltons.

On January 12, 2009, Mr. Riley filed the instant motion to dismiss. (Doc. 16). On February 9, 2009 Plaintiff filed an opposition, to which Mr. Riley replied on March 5, 2009. (Doc. 17, 24). On March 5, 2009, Plaintiff amended its complaint. (Doc. 23). The original complaint (Doc. 1) and the amended complaint (Doc. 23) are identical with respect to Plaintiff's claims against Mr. Riley.

### B. Factual

For purposes of this motion, the Court treats all of Plaintiff's factual allegations as true. The statement of facts in this section is not a final finding of facts, but a restatement of the facts as alleged.

TAC entered into a license agreement ("Melbourne Agreement") with FTA dated June 1, 2006, which created a franchisor/franchisee relationship between TAC and FTA and authorized FTA to operate a Tuffy® Auto Service Center in Melbourne, Florida. (Doc. 23 at ¶ 11, Ex. A). As an inducement to TAC to enter into this agreement, Robert Riley, Tracy Riley, Aubrey Felton, and Deborah Felton signed a guaranty contract ("Melbourne Guaranty"), dated May 26, 2006. The Melbourne Guaranty reads, in pertinent part:

> The undersigned, in order to induce [TAC] to enter into a License Agreement [the "Melbourne Agreement"], dated the 1st day of June, 2006, with [FTA], unconditionally, jointly and severally:
> 1.   guaranty to [TAC], its successors and assigns, the prompt and full payment and performance of all obligations of the Licensee to Licensor including, without limitation, all obligations arising out of the License Agreement or any other agreement between the parties, such as leases, subleases, notes or security agreements, or out of purchases on open account; [and]
> \* \* \*
> 8.   agree that our obligations under this agreement are joint and severable.

(Doc. 23, Ex. I).

Three additional license agreements were later entered into between TAC and FTA

2

authorizing service centers at three other locations: the "Beach Agreement," dated July 1, 2006 (Doc. 23 at ¶ 43, Ex. D); the "Lucie Agreement," dated September 1, 2006 (Doc. 23 at ¶ 74, Ex. E); and the "Clermont Agreement," dated August 1, 2006 (Doc. 23 at ¶ 105, Ex. F). Each license agreement was induced by a separate personal guaranty; each of the later three guarantees was signed by Tracy Riley and Aubrey Felton, and by no one else. ("Beach Guaranty," undated (Doc. 23, Ex. J); "Lucie Guaranty," dated August 28, 2006 (Doc. 23, Ex. K); and "Clermont Guaranty," dated July 2006 (Doc. 23, Ex. L)). All four guaranties are identical in language, with the exception only of the specific license agreement induced by each one. The only guaranty signed by Mr. Riley was the first, the "Melbourne Guaranty."

FTA became indebted to TAC. Under the license agreements FTA is indebted on open accounts in the amount of $11,819.90 as of October 21, 2008: $1,583.48 under the Melbourne Agreement, $721.34 under the Beach Agreement, $1,358.72 under the Lucie Agreement, and $8,156.36 under the Clermont Agreement. (Doc. 23 at ¶¶ 19, 52, 83, 114; Ex. B). These debts accrued during the period July 2008 – October 2008. (Doc. 23, Ex. B). FTA is also indebted to TAC under two promissory notes, both dated April 9, 2008. (Doc. 23 at ¶¶ 136, 146; Ex. G, H). "Note A" is in the principal amount of $115,000.00. (Doc. 23 at ¶ 136; Ex. G). "Note B" is in the principal amount of $68,000. (Doc 23 at ¶ 146; Ex. H). As of September 25, 2008, debt owed by FTA to TAC under Note A is $111,939.14 plus interest and late charges; and $48,948.83 plus interest and late charges under Note B. (Doc. 23 at ¶¶ 139, 149).

Plaintiff, in Count XXIII, makes the following claim against Mr. Riley:

> 178. Robert Riley, as an inducement for TAC to enter into the Melbourne Agreement with FTA, executed and delivered to TAC the Melbourne Guaranty, whereby Robert Riley personally and unconditionally guaranteed the prompt and full payment and performance of all obligations of FTA to TAC, including without

3

>limitation, all obligations arising out of the Melbourne Agreement or any other agreement between FTA and TAC, such as leases, subleases, notes or security agreements, or out of purchases on open account.
>179.   FTA has defaulted under the terms of the License Agreements and Notes.
>180.   Robert Riley has failed and refused to honor his obligations under the Melbourne Guaranty by not paying the indebtedness of FTA to TAC.

(Doc. 23 at 23).

## II.   STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Courts must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007); *Thurman v. Pfizer, Inc*., 484 F.3d 855, 859 (6th Cir. 2007). "To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, *Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007)).

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 127 S.Ct. at 1965 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action"). A complaint must state sufficient facts to, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

4

In conjunction with this standard, the Court is cognizant that Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (citing *Twombly*, 550 U.S. at 596); *see also Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295-96 (6th Cir 2008). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

The construction of a written contract is a question law, not of fact, *see Stone v. Natl. City Bank*, 106 Ohio App.3d 212, 217 (8 Dist. 1995) (quoting *Latina v. Woodpath Dev. Co.*, 57 Ohio St.3d 212, 214 (1991)), and as such is an appropriate question for judicial determination on a 12(b)(6) motion to dismiss.

## III. DISCUSSION

Mr. Riley argues that any past obligations of Mr. Riley to TAC were discharged by the formation of new promissory notes, as contracts of novation, which eliminated the principal obligation of the guaranty contract, thus extinguishing the guaranty contract entirely. (Doc. 16, 24). Mr. Riley also argues that he has not guaranteed any current or future obligations of FTA to TAC. (*Id.*). Mr. Riley further argues that any claims regarding FTA's obligations to TAC were the subject of a prior lawsuit and are barred by the doctrine of *res judicata*. (Doc. 16).

While Plaintiff acknowledges the novation of prior debts through the formation of the

5

promissory notes in question, Plaintiff argues that Mr. Riley is personally liable as guarantor for all obligations of FTA to TAC, regardless of time or subject matter involved. (Doc. 17). Plaintiff argues that Mr. Riley's guaranty, which was not novated, is absolute, unconditional, and continuing. (*Id.*). Plaintiff further argues that the subject matter of the prior lawsuit involved debts originating in a different time period than are alleged in this lawsuit, and thus are not barred by *res judicata*. (*Id.*).

### A. *Res Judicata*

Mr. Riley argues that the license agreement open account debts prior to May 2008 were the subject of previous litigation, judgment of which was satisfied in full, and claims for which are therefore barred under the doctrine of *res judicata.* (Doc. 16; *see also* Ex. A, D). TAC argues that the prior case involved different debts from those at issue in the instant case. (Doc. 17 at 2-7). Therefore, the instant case is not barred by *res judicata*. (Doc. 17 at 11-12).

In successive diversity actions, the Court applies federal, rather than state, *res judicata* principles. *See J.Z.G. Resources Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). Claim preclusion under *res judicata* requires satisfaction of four conditions: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or should have been litigated in the prior action; and (4) an identity of the causes of action." *Bittinger v. Tecumesh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997).

The prior case in question, *Tuffy Associates Corp. v. Felton Tire & Auto, Inc.*, case no. 3:08-cv-56-JZ (N.D. Ohio 2008) (Zhouary, J., presiding), involved debts under the license agreements incurred from August 2007 to December 2007, and default under a Promissory Note

6

dated September 1, 2006. (Doc. 17 at 2; Ex. A, B).

The claims raised against Mr. Riley in this subsequent action were not and could not have been litigated in the prior action. The prior case was resolved on May 30, 2008 by order of dismissal. (Doc. 16, Ex. A). The instant case alleges default on open-account debts incurred from July 2008 to October 2008, and default on two promissory notes dated April 9, 2008. (Doc. 23 at ¶¶ 15-19, 47-51, 78-82, 109-133, 135-139, 146-149; Ex. B, G, H). These are different claims from those advanced in the prior case. The open-account debts at issue here did not accrue until after the order dismissing the prior case. The promissory notes at issue here were entered into as a condition of TAC voluntarily dismissing the prior case, novating the debts at issue in the prior case, and thus could not have been litigated in the prior case. (Doc. 17 at 6). *Res judicata* does not apply to any of TAC's claims against Mr. Riley.

### B.     Extent and Efficacy of Mr. Riley's Guaranty

To determine whether a valid legal claim has been stated against Mr. Riley in his personal capacity, the Court must first determine the extent of Mr. Riley's personal guaranty. Mr. Riley argues that the novation of the prior debts by the April 2008 promissory notes extinguishes his personal guaranty. (Doc. 16 at 5-6). TAC argues that Mr. Riley's guaranty is unconditional and continuing, extending to all of FTA's obligations under any agreements with TAC, present and future, including the new promissory notes and open account debts under the license agreements. (Doc. 17 at 8-10). Mr. Riley counters that there is no language in the guaranty explicitly extending the guaranty to future agreements and obligations beyond those in existence at the time of the execution of the guaranty and should not be so extended by the Court. (Doc. 24 at 2).

Under Ohio law, a contract of guaranty is to be construed in favor of the guarantor.

*Liquidating Midland Bank v. Stecker*, 179 N.E. 504, 506 (Ohio Ct. App. 1930). Though a guaranty purports to be "unconditional," it will not be construed to be continuing absent a clear manifestation of such an intent. *See*, *e.g.*, *Fairview Realty Investors v. Seaair, Inc.*, 2002 Ohio 6819 at ¶ 11 (Ohio Ct. App. 2002). If the language of the guaranty does not explicitly state that the obligation is continuing, *i.e.* unlimited as to time, then the guaranty is ambiguous in that respect. *See*, *e.g.*, *Merchants's Nat. Bank v. Cole*, 83 Ohio St. 50 (1910); *Cambria Iron Co. v. Keynes*, 56 Ohio St. 501 (1897). If the express language of the guaranty is reasonably and equally capable of two constructions, the guaranty will be construed to be limited in time rather than continuing. *Merchant's Nat. Bank*, 83 Ohio St. at 58; *Yearling Properties v. Tedder*, 53 Ohio App.3d 52, 54 (Ohio Ct. App., Franklin County 1988).

Paragraph one of the Melbourne Guaranty, the only guaranty to which Mr. Riley was a party, guarantees "the prompt and full payment and performance of all obligations of [FTA] to [TAC] including, without limitation, all obligations arising out of the License agreement or any other agreement between the parties." (Doc. 23, Ex. I). Plaintiff would have the Court read "without limitation" as modifying the *first* mention of "obligations,"[2] and so extends to obligations under agreements not yet in existence or contemplated between FTA and TAC. However, it is more grammatically sound to read "without limitation" as modifying the *second* "obligations," which are *further clarified* as obligations arising under agreements between the parties. Under this interpretation, obligations under future agreements are not explicitly contemplated by the terms of the guaranty. The Melbourne guarantors would thus be liable for (1) all obligations then existing between FTA and TAC and, (2) for all obligations, without limitation, under the

---

[2] Or, alternatively, as modifying "agreements," which would yield the same result.

8

Melbourne Agreement and other agreements then in existence between FTA and TAC. The Melbourne Guaranty extends no farther. The obligations under the existing agreements are guaranteed without limitation; but the agreements under which guaranteed obligations can arise are limited.

The subsequent actions of the parties further evidence an intent to guaranty only those future obligations arising under agreements then in existence. TAC, at later times, entered into three other guaranty contracts, identical in language, with Aubrey Felton and Tracy Riley, both of whom were guarantors under the Melbourne Guaranty. (Doc. 23, Ex. J-L). These subsequent guaranties were given as an inducement to enter into additional license agreements. If the Melbourne Guaranty was intended by the parties to continue and cover future agreements between FTA and TAC, there would be no need for further guaranties on the part of Aubrey Felton and Tracy Riley. The Beach, Lucie, and Clermont Guaranties would be mere surplusage, as Aubrey Felton and Tracy Riley would have already guaranteed all of FTA's obligations under agreements with TAC in perpetuity.

As it is at least as likely as not that the guaranty is limited in time to the Melbourne agreement and to those agreements then in existence, the Court construes the guaranty to be so limited. *See Merchant's Nat. Bank*, 83 Ohio St. at 58. Mr. Riley's obligations under the Melbourne Guaranty extend only to FTA's obligations under the Melbourne Agreement and any other agreements in existence at that time, including the April 2006 Promissory Note.

Mr. Riley argues that his personal guaranty does not extend to obligations under the Melbourne Agreement which FTA incurred subsequent to his withdrawal from the corporation. (Doc. 16 at 3). This argument fails, as Mr. Riley's guaranty was not given as a representative of

9

FTA. Mr. Riley's guaranty was a personal guaranty from which he was never released. (Doc. 23, Ex. C "Settlement and Consent to Transfer Agreement" at § 4(f)).

### C. Novation of Prior Debts

Mr. Riley contends that his guaranty was extinguished by the novation of FTA's obligations to TAC under the Melbourne Agreement and the 2006 Note. (Doc. 16, 24). Plaintiff acknowledges that the 2008 Notes are in fact novations of FTA's debts under the license agreements and the 2006 Note. (Doc. 17 at 6). Plaintiff argues, however, that Mr. Riley's guaranty extends to the new obligations created by the new notes. (*Id.*).

A contract of novation extinguishes a prior obligation, substituting in its place a new obligation based on valid consideration. *McGlothin v. Huffman*, 94 Ohio App.3d 240, 244; 640 N.E.2d 598 (Ohio Ct. App. 1994). A novation of a contract discharges the guarantor from his liability as to the underlying obligations. *Burnside Steel Foundry Co. v. General Metal Products Co.*, 115 Ohio App. 121 (1961); *Ridenour v. Haynes*, 11 Ohio L.Abs. 131 (1931).

It is admitted by both TAC and Mr. Riley that the 2008 Promissory Notes are novations of the 2006 Promissory Note and the Prior Case debts (those debts under the license agreements accrued on open accounts up to May 2008). 2008 Note A was substituted for the 2006 promissory note. 2008 Note B was substituted for the open account debt accrued up to that point. The 2008 promissory notes are new contracts, new agreements, which Mr. Riley did not guaranty. (*See* Part III.C, *supra*). Mr. Riley's personal liability under the 2006 Note and the Prior Case debts was extinguished by the 2008 Notes. Mr. Riley was not a signatory, in an official or personal capacity, to the 2008 notes. Mr. Riley bears no personal liability to TAC for FTA's indebtedness under the 2008 Notes.

10

The Melbourne Agreement, however, has never been novated. Mr. Riley guaranteed FTA's obligations under that particular license agreement. The Prior Case Debts included obligations under the Melbourne open accounts. Those specific obligations were novated. Any debts accrued under the open accounts subsequent to the Prior Case have not been novated. Mr. Riley continues to be personally obligated under the Melbourne Guaranty for any open account indebtedness under the Melbourne License Agreement.

Thus, and in sum, Mr. Riley's liability under the Melbourne Guaranty is limited to unpaid obligations of FTA under the Melbourne Agreement and any other agreements entered into between FTA and TAC prior to that time (May 26, 2006). The Guaranty is forward looking only with respect to future obligations incurred under the Melbourne Agreement and other agreements then in existence. The 2008 Notes have novated FTA's obligations under the April 2006 Note and open account debt under the Melbourne Agreement incurred prior to April 2008. Mr. Riley's liability in this case is thus limited to FTA's open account debts under the Melbourne Agreement incurred subsequent to April 2008.

## IV.  CONCLUSION

Accordingly, Mr. Riley's motion to dismiss is granted in part and denied in part. (Doc. 16). Plaintiff's claims against Mr. Riley with respect to 2008 Note A, 2008 Note B, and open account indebtedness under the Beach, Lucie, and Clermont Agreements, are dismissed for failure to state a claim on which relief can be granted. With respect to Plaintiff's claim against Mr. Riley for FTA's open-account indebtedness under the Melbourne Agreement, Mr. Riley's motion is denied. Plaintiff is allowed to proceed with his claim against Mr. Riley on the open-account indebtedness under the Melbourne Agreement, which indebtedness, as of October 21, 2008, is

alleged to be $1,583.48.

    IT IS SO ORDERED.

                                                    s/ *David A. Katz*
                                                    DAVID A. KATZ
                                                    U. S. DISTRICT JUDGE